# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN JOSE

## CR 09        0357
### UNITED STATES OF AMERICA,

### v.

**RMW**

EVERTOP SERVICES SND BHD,
AMIR GHASEMI, MAJID KAKAVAND,
and ALEX RAMZI

**HRL**

DEFENDANT(S).

## INDICTMENT

Conspiracy to Export Goods w/o a License (50 U.S.C. §§ 1702 &
1705 & 31 C.F.R. Parts 560.203 & 560.204); Exporting Goods w/o a
License (50 U.S.C. §§ 1702 & 1705; 31 C.F.R. Parts 560.203 &
560.204; & 18 U.S.C. § 2); Conspiracy to Commit Money Laundering
(18 U.S.C. § 1956(h)); Money Laundering (18 U.S.C. §§ 1956(a)(2)
(A) & 2); Smuggling Goods (18 U.S.C. §§ 554 & 2); Conspiracy to
Defraud the U.S. (18 U.S.C. § 371); False Statements (18 U.S.C. §§
1001 & 2); & Forfeiture (50 U.S.C. app § 2410(g), 18 U.S.C. §§ 981
(a(1(C)& 982(a)(1),& 28 U.S.C. § 2461(c))

A true bill.

_Angeliassmondre_
Foreman

Filed in open court this 4-7 day of 2009

_Simone Volk_
Clerk

Bail, $ _No bail_   warrants as to
Ghasemi, Kakavand
and Ramzi

1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

                                        CR 09
11  UNITED STATES OF AMERICA,        )  No.                    0357 HRL
                                     )
12            Plaintiff,             )  VIOLATIONS: Conspiracy to Export Goods
                                     )  Without a License (50 U.S.C. §§ 1702 and
13                                   )  1705 and 31 C.F.R. Parts 560.203 and
                                     )  560.204); Exporting Goods Without a
14       v.                          )  License (50 U.S.C. §§ 1702 and 1705; 31
                                     )  C.F.R. Parts 560.203 and 560.204; and 18
15                                   )  U.S.C. § 2); Conspiracy to Commit Money
    EVERTOP SERVICES SND BHD,        )  Laundering (18 U.S.C. § 1956(h)); Money
16  AMIR GHASEMI,                    )  Laundering  (18 U.S.C. §§ 1956(a)(2)(A)
    MAJID KAKAVAND, and              )  and 2); Smuggling Goods (18 U.S.C. §§ 554
17  ALEX RAMZI,                      )  and 2); Conspiracy to Defraud the United
                                     )  States (18 U.S.C. § 371); False Statements
18            Defendants.            )  (18 U.S.C. §§ 1001 and 2); and Forfeiture
                                     )  (50 U.S.C. app § 2410(g), 18 U.S.C. §§
19                                   )  981(a)(1)(C) and 982(a)(1), and 28 U.S.C.
                                     )  § 2461(c))
20                                   )
                                     )  SAN JOSE VENUE
21                                   )

22                          I N D I C T M E N T

23  The Grand Jury charges:

24       At all times relevant to this Indictment:

25                          INTRODUCTION

26       1.    Defendant EVERTOP SERVICES SND BHD (hereinafter "EVERTOP

27  SERVICES"), was a company that acted as an "electronic and electrical components and parts

28  merchant." EVERTOP SERVICES purchased electronic equipment from companies in the

    INDICTMENT

1  United States, and elsewhere, for customers in Iran. The registered business address for

2  EVERTOP was in Kuala Lumpur, Malaysia.

3      2.    Defendant AMIR GHASEMI (hereinafter "GHASEMI"), was a citizen and

4  resident of Iran, and a Director of EVERTOP SERVICES.

5      3.    Defendant MAJID KAKAVAND (hereinafter "KAKAVAND"), was a citizen and

6  resident of Iran, and a Director of EVERTOP SERVICES.

7      4.    Defendant ALEX RAMZI (hereinafter "RAMZI"), was the Purchasing Supervisor

8  and Sales Representative for EVERTOP SERVICES.

9      5.    The email address referred to herein as "EMAIL ADDRESS 1" was created on or

10  about January 10, 2006, and it was accessed primarily from Iran and Malaysia.

11      6.    The email address herein referred to as "EMAIL ADDRESS 2" was created on or

12  about October 2, 2001, and it was frequently accessed from Iran.

13      7.    A company herein referred to as "FREIGHT FORWARDER 1" was a freight

14  forwarder with offices in the United States and Kuala Lumpur, Malaysia, among other locations.

15      8.    Iran Electronics Industry ("I.E.I.") was an organization located in Iran that offered

16  a diversified range of military products including electro-optics and lasers, communication

17  equipment, telecommunication security equipment, electronic warfare equipment, new and

18  refurbished radar tubes, and missile launchers. I.E.I. manufactured military tactical

19  communication systems and also electronic field telephones and switchboards. I.E.I. also

20  manufactured night vision systems and laser range finders in addition to binoculars and

21  periscopes.

22      9.    Iran Communication Industries ("I.C.I.") was Iran's leading manufacturer of

23  military and civilian communication equipment and systems. I.C.I. offered tactical

24  communications and encryption systems that met a wide range of the Iranian military's

25  requirements.

26      The Iran Trade Embargo and the Iranian Transactions Regulations

27      10.    The International Emergency Economic Powers Act ("IEEPA"), Title 50, United

28  States Code, Sections 1701-1706, authorizes the President of the United States ("the President")

INDICTMENT                2

1   to impose economic sanctions on a foreign country in response to an unusual or extraordinary

2   threat to the national security, foreign policy, or economy of the United States when the President

3   declares a national emergency with respect to that threat.

4         11.    On March 15, 1995, the President issued Executive Order 12957 finding that "the

5   actions and policies of the Government of Iran constitute an unusual and extraordinary threat to

6   the national security, foreign policy, and economy of the United States," and declaring "a national

7   emergency to deal with that threat." Executive Order 12957, as expanded and continued by

8   Executive Orders 12959 and 13059, was in effect at all times relevant to this Indictment.

9         12.    Executive Orders 12959 and 13059 (collectively, with Executive Order 12957,

10   "Executive Orders") impose economic sanctions, including a trade embargo, on Iran.

11   Specifically, the Executive Orders prohibit among other things, the exportation, reexportation,

12   sale or supply, directly or indirectly, to Iran of any goods, technology, or services from the United

13   States or by a United States person or within the United States that evades or avoids or has the

14   purpose of evading or avoiding, any prohibitions set forth in the Executive Orders.

15         13.    The Executive Orders authorize the United States Secretary of Treasury, in

16   consultation with the United States Secretary of State, "to take such actions, including the

17   promulgation of rules and regulations, as may be necessary to carry out the purposes" of the

18   Executive Orders. Pursuant to this authority, the Secretary of Treasury promulgated the Iranian

19   Transactions Regulations, Title 31, Code of Federal Regulations, Part 560, implementing the

20   sanctions imposed by the Executive Orders.

21         14.    The Iranian Transactions Regulations prohibit, among other things, the export,

22   reexport, sale or supply, directly or indirectly, of any goods, technology, or services from the

23   United States or by a United States person, wherever located, to Iran or the Government of Iran,

24   without prior authorization or license from the United States Department of Treasury, through

25   the Office of Foreign Assets Control. These regulations further prohibit any transactions that

26   evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in

27   the Iranian Transactions Regulations, including the unauthorized exportation of goods from the

28   United States to a third country if the goods are intended or destined for Iran.

INDICTMENT                   3

15. The Executive Orders and the Iranian Transactions Regulations were in effect at all times relevant to this Indictment.

16. At no time did the defendants, EVERTOP SERVICES, KAKAVAND, GHASEMI, or RAMZI, apply for, receive, or possess a license or authorization from the Office of Foreign Assets Control, United States Department of Treasury, to export goods, technology, or services, of any description, to Iran.

Export and Shipping Records

17. Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those forms are filed electronically through the Automated Export System ("AES") administered by the United States Department of Homeland Security ("DHS"), Bureau of Customs and Border Protection. A Shipper's Export Declaration ("SED") is an official document submitted to DHS in connection with export shipments from the United States.

18. An essential and material part of the SED and AES, as well as other export filings, is information concerning the end-user or ultimate destination of the export. The identity of the end-user may determine whether the goods may be exported a) without any specific authorization from the United States government; b) with the specific authorization or validated license from the United States Department of Commerce, the United States Department of State, or the United States Department of Treasury; or c) whether the goods may not be exported from the United States.

19. The SED or AES is equivalent to a statement to the United States government that the transaction occurred as described. The SED or AES is used by the United States Bureau of Census to collect trade statistics and by the Bureau of Industry and Security, Department of Commerce, for export control purposes.

//
//
//

INDICTMENT                                          4

COUNT ONE: (Conspiracy to Export to an Embargoed Country) 50 U.S.C. §§ 1702 and 1705 and 31 C.F.R. Parts 560.203 and 560.204

20.     The allegations in paragraphs 1 through 19 are incorporated and re-alleged by reference in this Count.

21.     Beginning as early as in or about January 2006, and continuing through the present, in the Northern District of California and elsewhere, the defendants,

EVERTOP SERVICES,<br>
AMIR GHASEMI,<br>
MAJID KAKAVAND, and<br>
ALEX RAMZI,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is, to export and cause the exportation of goods, specifically, electronic equipment, from the United States to Iran in violation of the embargo imposed upon that country by the United States, without having first obtained the required licenses and authorizations from the Office of Foreign Assets Control, United States Department of Treasury.

22.     It was part of the conspiracy that GHASEMI and KAKAVAND established the company EVERTOP SERVICES in Malaysia for the purpose of importing goods from the United States and Europe and then exporting those goods to their customers in Iran.

23.     It was further part of the conspiracy that EVERTOP SERVICES, GHASEMI, KAKAVAND, and RAMZI caused electronic equipment to be exported from the United States to individuals and entities in Iran without obtaining a license from the Office of Foreign Asset Control, United States Department of Treasury.

24.     It was further part of the conspiracy that GHASEMI, KAKAVAND, and RAMZI all used EMAIL ACCOUNT 1 to conduct business on behalf of EVERTOP SERVICES, and signed their names, "Amir," "Majid," and "Alex," respectively.  GHASEMI, KAKAVAND, and RAMZI used this email account to communicate with United States companies, FREIGHT FORWARDER 1, and each other.

25.     It was further part of the conspiracy that GHASEMI, KAKAVAND, and RAMZI all used the email account EMAIL ACCOUNT 2 to conduct business on behalf of EVERTOP

INDICTMENT                                        5

SERVICES. GHASEMI, KAKAVAND, and RAMZI used this email account to communicate with United States companies, FREIGHT FORWARDER 1, EVERTOP SERVICES' customers in Iran, and each other.

26.     It was further part of the conspiracy that EVERTOP SERVICES and RAMZI contacted companies in the United States to purchase electronic items, such as capacitors, resistors, sensors, connectors, measurement systems, reflectometers, and rivets. During the procurement process, EVERTOP SERVICES and RAMZI sent emails with requests for quote and purchase orders to companies in the United States.

27.     It was further part of the conspiracy that during the procurement process, EVERTOP SERVICES and RAMZI advised the United States companies that the end user for the products was in Malaysia and that the products would not be transshipped to any third parties.

28.     It was further part of the conspiracy that EVERTOP SERVICES, GHASEMI, KAKAVAND, and RAMZI paid the United States companies for the products in United States dollars by sending wire transfers directly to the accounts of the United States companies in the United States.

29.     It was further part of the conspiracy that EVERTOP SERVICES and RAMZI intentionally concealed from the companies, shippers, and freight forwarders located in the United States, the ultimate end-users or consignees of the items they purchased in the United States.

30.     It was further part of the conspiracy that EVERTOP SERVICES, KAKAVAND, GHASEMI, and RAMZI caused United States companies and freight forwarders to include materially false, misleading and incomplete information in documents, air waybills, and AES and SED records.

31.     It was further part of the conspiracy that EVERTOP SERVICES and RAMZI advised the United States companies and the freight forwarders in the United States to ship the items to EVERTOP SERVICES in Malaysia, care of FREIGHT FORWARDER 1.

32.     It was further part of the conspiracy that EVERTOP SERVICES, GHASEMI, and KAKAVAND sent Commercial Invoices to FREIGHT FORWARDER 1 that included the name

INDICTMENT                                6

1   of the Iranian company that was the customer for the goods, an itemized list of the items to be

2   shipped to Iran, and a price in Euros or United States dollars.

3         33.     It was further part of the conspiracy that EVERTOP SERVICES, GHASEMI, and

4   KAKAVAND directed FREIGHT FORWARDER 1 and caused FREIGHT FORWARDER 1 to

5   ship the items received from the United States companies to EVERTOP SERVICES' customers

6   in Iran, via IranAir. In all, EVERTOP SERVICES, GHASEMI, KAKAVAND, and RAMZI

7   re-exported more than 30 shipments of goods, valued at over \$1,187,212.00 that originated in the

8   United States to Iran.

9         34.     In furtherance of the conspiracy and to effect the objects thereof, within the

10   Northern District of California and elsewhere, the defendants EVERTOP SERVICES,

11   GHASEMI, KAKAVAND, RAMZI, and others, did commit and cause to be committed the

12   following overt acts, among others:

13                             OVERT ACTS

14         a.     On or about February 26, 2006, KAKAVAND sent an email to an individual in

15   Malaysia seeking assistance in finding an employee for a company that he recently established in

16   Malaysia that traded in "electronic and electrical components and parts." KAKAVAND stated

17   that his company "mostly import[s] goods from USA and Europe and then export them to our

18   customers in Middle East and South East Asia."

19         b.     On or about February 27, 2006, KAKAVAND sent an email to an individual in

20   Malaysia in which he stated that he and GHASEMI are the two directors for "a small private

21   company" that is established in Malaysia "for the sake of shipment purposes only."

22         c.     On or about April 24, 2006, KAKAVAND sent an email to RAMZI in which he

23   described a "very difficult meeting" that he had with "ICI." KAKAVAND explained that "[t]hey

24   need the urgent items as urgently as possible. So it seems as if there is no way out except for

25   doing what they need. We have to be very much in a hurry. I have promised them to ship out

26   two orders of evertop within next 3 weeks." He also conveyed an "urgent inquiry" for items from

27   two specified United States companies, and asked RAMZI to have an offer for these items within

28   the week.

INDICTMENT                     7

New Jersey Company Shipment

d.      On or about December 12, 2006, RAMZI signed his name, "Alex," on a NEW JERSEY COMPANY Export End User Form that listed, among other things, the end user for PO 06-16-ET-121 as EVERTOP SERVICES in Malaysia.  By signing the form, RAMZI certified that, "no item purchased from [EVERTOP SERVICES] will be exported or Reexported diverted or transshipped via any embargoed countries."

e.      On or about March 8, 2007, EVERTOP SERVICES and RAMZI caused NEW JERSEY COMPANY to file an SED that indicated that "EVERTOP K LINE," located in Malaysia, was the ultimate consignee for $7,046 worth of resistors and capacitors being shipped from New Jersey to Malaysia, and that for each of the items being shipped, no license was required.

f.      On March 14, 2007, KAKAVAND sent an email to FREIGHT FORWARDER 1 advising them to ship the items on the attached invoice (INV-06121.pdf), which included the 1000 capacitors and 400 resistors that EVERTOP SERVICES had purchased from NEW JERSEY COMPANY, along with other items, to I.E.I. in Shiraz, Iran.  KAKAVAND instructed FREIGHT FORWARDER 1 to send the items via IranAir.

Alabama Company Shipment

g.      On or about January 25, 2007, EVERTOP SERVICES and RAMZI responded to an email from ALABAMA COMPANY entitled, "Re: Purchase Order Ref No. 06-15-ET-133-[ALABAMA COMPANY]," that said, "Please tell me the country that will be the final destination for the items on this order."  RAMZI responded, "We will use this equipment for our projects in Malaysia."

h.      In or about December 2007, KAKAVAND directed FREIGHT FORWARDER 1 to ship the "LPSR" from ALABAMA COMPANY on the first available Iran Air flight, and indicated that the shipment was "very urgent."

i.      On or about January 3, 2008, EVERTOP SERVICES and RAMZI caused ALABAMA COMPANY to issue an SED for a shipment of $91,000 worth of electrical spectrometers and spectrographs to EVERTOP SERVICES, indicating that the ultimate

INDICTMENT                                    8

1   destination for these goods was Malaysia and that no license was required to ship them.

2       j.      On or about January 3, 2008, EVERTOP SERVICES issued a Commercial

3   Invoice (INV-15-06133-2) to I.C.I. in Tehran, Iran, for one "LPSR-300 Spectro Reflectometer,"

4   valued at 88,000 Euros and one "Solar Absorptance Reference Puck Option" valued at 850

5   Euros.

6       Florida Company Shipment

7       k.      On or about July 20, 2007, EVERTOP SERVICES and RAMZI caused FLORIDA

8   COMPANY to file an SED that indicated that EVERTOP SERVICES, located in Malaysia, was

9   the ultimate consignee for a shipment of $117,460 worth of fixed capacitors being shipped from

10  FLORIDA COMPANY to Malaysia, and that no license was required for the shipment.

11      l.      On or about July 23, 2007, EVERTOP SERVICES issued a Commercial Invoice

12  (INV-15-07204-2) to I.C.I. in Tehran, Iran, for, among other items, 3500 capacitors with a value

13  of 118,930 Euros.

14      California Company 1 Shipment

15      m.      On or about November 15, 2007, EVERTOP SERVICES sent a wire transfer of

16  $16,960.00 from its account at Maybank in Malaysia, to CALIFORNIA COMPANY 1's bank

17  account at Greater Bank N.A., located in San Jose, California.

18      n.      On or about November 17, 2007, EVERTOP SERVICES and GHASEMI caused

19  CALIFORNIA COMPANY 1, located in Morgan Hill, California, to file an SED indicating that

20  EVERTOP SERVICES, located in Malaysia, was the ultimate consignee for $17,000 worth of

21  pressure measurement instruments being shipped from Alaska to Malaysia, and that no license

22  was required for the shipment.

23      o.      In or about November 2007, GHASEMI sent an email to FREIGHT

24  FORWARDER 1 entitled "RE: ACS and [CALIFORNIA COMPANY 1] shipment" in which he

25  advised that "We are in a hurry for below parts. Please kindly send =arts if AWBs aren't ready."

26      p.      On or about November 22, 2007, EVERTOP SERVICES and GHASEMI caused

27  a freight forwarder to send the sensors purchased from CALIFORNIA COMPANY 1 to Farazeh

28  Tajhiz Gostar in Iran.

INDICTMENT                         9

California Company 2

q.      On or about December 3, 2007, EVERTOP SERVICES and RAMZI sent a Purchase Order (07-15-ET-254-APS) to CALIFORNIA COMPANY 2, located in Campbell, California, for 41,900 Radiall Connectors with three product numbers: R114 186 000, R141 082 000, and R210 160 020, with a proposed purchase price of $50,000.

r.      On or about January 16, 2008, EVERTOP SERVICES and RAMZI sent a wire transfer of $51,425.00 from EVERTOP SERVICES' account at Maybank in Malaysia to CALIFORNIA COMPANY 2's Wells Fargo bank account in Campbell, California.

s.      On or about January 26, 2008, EVERTOP SERVICES and RAMZI caused CALIFORNIA COMPANY 2 to file an SED indicating that EVERTOP SERVICES, located in Malaysia, was the ultimate consignee for $51,430 worth of electric resistor parts being shipped from Los Angeles, California to Malaysia, and that no license was required for the shipment.

California Company 3

t.      On or about January 9, 2008, RAMZI sent an email to CALIFORNIA COMPANY 3, located in Milpitas, California, attaching a purchase order (PO # 07-15-ET-258-EPS) for inductors. RAMZI also stated that the payment for the shipment of these items would be "Cash Prior to Shipment" which will be sent by wire transfer.

u.      On or about January 17, 2008, RAMZI sent an email referencing Purchase Order Ref No. 07-15-ET-258-EPS, to CALIFORNIA COMPANY 3, attaching an end-use statement signed, "Alex," dated January 17, 2008, certifying in pertinent part that EVERTOP SERVICES will not "use, transfer, export, re-export, resell or otherwise dispose of any items purchased from [CALIFORNIA COMPANY 3] to any destination, end-user or for any end use prohibited by the laws of the United States" and that EVERTOP SERVICES does not "ship to any countries that are against US laws."

v.      On or about March 7, 2008, EVERTOP SERVICES and RAMZI wired $17,855 from their account at Maybank in Malaysia, to CALIFORNIA COMPANY 3's California Bank and Trust account in Fremont, California.

w.      On or about March 29, 2008, EVERTOP SERVICES and RAMZI caused

INDICTMENT                              10

1   CALIFORNIA COMPANY 3 to file an SED indicating that the ultimate consignee for the

2   shipment of $17,875 worth of Inductors being shipped from California to Malaysia, was

3   EVERTOP SERVICES in Malaysia, and that no license was required for the shipment.

4        x.     On or about April 7, 2008, KAKAVAND sent an email to FREIGHT

5   FORWARDER 1 attaching a Commercial Invoice for I.C.I., that included, among other items,

6   2,500 inductors, with a total value of 16,500 Euros, and advising FREIGHT FORWARDER 1 to

7   ship the items on the "first available Iran Air flight." In his email, KAKAVAND indicated that

8   the inductors were from [CALIFORNIA COMPANY 3].

9        All in violation of in violation of Title 50, United States Code, Sections 1702 and 1705;

10  and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204.

11

12  COUNTS TWO THROUGH FOUR: (Exports To an Embargoed Country) 50 U.S.C. §§ 1702
    and 1705 and 31 C.F.R. Parts 560.203 and 560.204 and 18 U.S.C. § 2

13

14       35.     On or about the dates listed as to each count below, in the Northern District of

15  California and elsewhere, the defendants,

16                     EVERTOP SERVICES,
                       AMIR GHASEMI,

17                MAJID KAKAVAND, and
                       ALEX RAMZI,

18  did knowingly and willfully violate the embargo against Iran by exporting and causing to export

19  goods, and attempting to export and cause to be exported goods, as described more fully below,

20  from the United States to Iran, without first obtaining the required licenses and authorizations

21  from the Office of Foreign Assets Control, United States Department of the Treasury.

22  
23  

| COUNT | DATES | GOODS | CALIFORNIA COMPANY NO. |
| --- | --- | --- | --- |
| TWO | August 19, 2007 to November 27, 2007 | Pressure Sensors | 1 |
| THREE | December 3, 2007 to February 5, 2008 | Radiall Connectors | 2 |
| FOUR | January 9, 2008 to July 2, 2008 | Inductors | 3 |

24  
25  
26  

     All in violation of Title 50, United States Code, Sections 1702 and 1705; Title 31, Code

27  of Federal Regulations, Parts 560.203 and 560.204, and Title 18, United States Code, Section 2.

28

INDICTMENT           11

1   COUNT FIVE: (Conspiracy to Commit Money Laundering)  18 U.S.C. §§ 1956(a)(2)(A) and (h)

2      36.    The factual allegations contained in paragraphs 1 through 19, and 22 through 34

3   are incorporated and re-alleged by reference in this Count.

4      37.    From on or about January 2006, through the present, in the Northern District of

5   California, and elsewhere, the defendants,

6                          EVERTOP SERVICES,
                           AMIR GHASEMI,
7                          MAJID KAKAVAND, and
                           ALEX RAMZI,

8   did knowingly combine, conspire, and agree with each other and with other persons known and

9   unknown to the Grand Jury to commit offenses against the United States in violation of Title 18,

10  United States Code, Section 1956, specifically, to transmit and transfer funds, specifically, over

11  $86,240.00, from a place outside the United States to a place in the United States with the intent

12  to promote the carrying on of specified unlawful activity, specifically, willfully exporting goods

13  from the United States to Iran without a license in violation of Title 50, United States Code,

14  Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204, and

15  knowingly and fraudulently smuggling goods from the United States in violation of Title 18,

16  United States Code, Section 554.

17      All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h).

18

19  COUNTS SIX THROUGH EIGHT: (Money Laundering) 18 U.S.C. §§ 1956(a)(2)(A) and 2

20      38.    On or about the dates listed as to each count below, in the Northern District of

21  California and elsewhere, the defendants,

22                         EVERTOP SERVICES,
                           AMIR GHASEMI,
23                         MAJID KAKAVAND, and
                           ALEX RAMZI,
24

25  and others, did transmit and transfer and attempt to transmit and transfer funds, as described

26  more fully below for each count, from a place outside the United States, that is Malaysia, to a

27  place in the United States, that is California, with the intent to promote the carrying on of

28  specified unlawful activity, that is, willfully exporting goods from the United States to Iran

INDICTMENT                        12

without a license in violation of Title 50, United States Code, Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204 and knowingly and fraudulently smuggling goods from the United States in violation of Title 18, United States Code, Section 554.

| COUNT | DATE | AMOUNT | CALIFORNIA COMPANY NO. |
|-------|------|--------|------------------------|
| SIX | November 15, 2007 | $16,960.00 | 1 |
| SEVEN | January 16, 2008 | $51,425.00 | 2 |
| EIGHT | March 7, 2008 | $17,855.00 | 3 |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

COUNTS NINE THROUGH ELEVEN: (Smuggling Goods) 18 U.S.C. §§ 554 and 2

39.     On or about the dates listed as to each count below, in the Northern District of California and elsewhere, the defendants,

EVERTOP SERVICES,
AMIR GHASEMI,
MAJID KAKAVAND, and
ALEX RAMZI,

and others, did knowingly and fraudulently export and send, and attempt to export and send from the United States, merchandise, articles, and objects described more fully below, contrary to the laws and regulations of the United States, specifically, Title 50, United States Code, Sections 1702 and 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204.

| COUNT | DATES | ITEMS | CALIFORNIA COMPANY NO. |
|-------|-------|-------|------------------------|
| NINE | August 19, 2007 to November 27, 2007 | Pressure Sensors | 1 |
| TEN | December 3, 2007 to February 5, 2008 | Radiall Connectors | 2 |
| ELEVEN | January 9, 2008 to July 2, 2008 | Inductors | 3 |

All in violation of Title 18, United States Code, Sections 554 and 2.

//

//

//

INDICTMENT                          13

COUNT TWELVE: (Conspiracy to Defraud the United States) 18 U.S.C. § 371

40.     The allegations in paragraphs 1 through 19 and 22 through 34 are incorporated and re-alleged by reference in this Count.

41.     Beginning as early as in or about January 2006, and continuing through the present, in the Northern District of California and elsewhere, the defendants,

> EVERTOP SERVICES,
> MAJID KAKAVAND,
> AMIR GHASEMI, and
> ALEX RAMZI,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, specifically, to defraud the Department of the Treasury and the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export and supply of goods from the United States to Iran without authorization or a license, by deceit, craft, trickery, and dishonest means in violation of Title 18, United States Code, Section 371.

COUNTS THIRTEEN THROUGH FIFTEEN: (False Statements) 18 U.S.C. §§ 1001 and 2

42.     The allegations in paragraphs 17 through 19 are incorporated and re-alleged by reference in this Count.

43.     Beginning as early as in or about January 2006, and continuing through the present, in the Northern District of California and elsewhere, the defendants,

> EVERTOP SERVICES,
> MAJID KAKAVAND,
> AMIR GHASEMI, and
> ALEX RAMZI,

in a matter within the jurisdiction of the United States Department of Commerce and the United States Department of Census, did knowingly and willfully cause to be falsified, concealed, and covered up, by trick, scheme, and device, material facts, and caused to be made false, fictitious, and fraudulent statements and representations as to a material fact, and caused to be made and used a false writing and document knowing the same to contain false, fictitious and fraudulent

INDICTMENT                              14

1  entry, by causing the maintenance for inspection by the United States Department of Commerce

2  and the United States Department of Census, false and fictitious shipping documents, including

3  air waybills, Automated Export System records, and Shipper's Export Declarations, which stated

4  that 1) no license was required ("NLR"), and 2) the ultimate consignee was an entity located in

5  Malaysia, as described more fully below for each count, when the defendants there and then

6  knew that these statements were false, the ultimate destination for the goods was Iran, and a

7  license was required for the shipment.

| COUNT | DATE | ULTIMATE CONSIGNEE | CALIFORNIA COMPANY NO. |
|---|---|---|---|
| THIRTEEN | November 17, 2007 | Evertop Svcs Sdn Bhd C/K-line Log M'sia, Lot C24 203 Jalan Bukit Bintag Kuala Lumpur, 55100 MY | 1 |
| FOURTEEN | January 26, 2008 | Evertop Services Sdn Bhd Suite 33-01, 33fl, Menara Keck Seng Kuala Lumpur, 55100 MY | 2 |
| FIFTEEN | March 29, 2008 | Evertop Services Sdn Bhd C/O KLine Logistics Sdn Bhd Lot C24, Malaysia Airlines Klia Free Trade Zone, Sepang, 64000 MY | 3 |

In violation of Title 18, United States Code, Sections 1001 and 2.

FORFEITURE ALLEGATION ONE: (Export Forfeiture) 50 U.S.C. app § 2410(g)

44.     The factual allegations contained in Counts One through Four of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 50, United States Code, app Section 2410(g).

45.     Upon a conviction of any of the offenses alleged in Counts One through Four, the defendants,

EVERTOP SERVICES,
MAJID KAKAVAND,
AMIR GHASEMI, and
ALEX RAMZI,

shall forfeit to the United States, pursuant to Title 50, United States Code, app Section 2410(g),

INDICTMENT                                    15

any property that was the subject of the export violations, any property that was used in the export or attempted export violations, and any property which constitutes or is derived from any proceeds obtained directly or indirectly as a result of the export violations, including but not limited to all funds and bank accounts which facilitated the offenses.

46.     If any of the property described above, as a result of any act or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 18, United States Code, Section 1963.

All pursuant to Title 50, United States Code, app Section 2410(g).

FORFEITURE ALLEGATION TWO: (Money Laundering Forfeiture) 18 U.S.C. § 982(a)(1)

47.     The factual allegations contained in Counts Five through Eight of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

48.     Upon a conviction of any of the offenses alleged in Counts Five through Eight, the defendants,

EVERTOP SERVICES,<br>
MAJID KAKAVAND,<br>
AMIR GHASEMI, and<br>
ALEX RAMZI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all right, title, and interest in property, real and personal, involved in said violation.

49.     If, as a result of any act or omission of the defendants, any of said property

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

INDICTMENT               16

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United

States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All in violation of Title 18, United States Code, Section 982.


FORFEITURE ALLEGATION THREE:   (Forfeiture of Proceeds of Smuggled Goods)
                               18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

50.   The factual allegations contained in Counts Nine through Eleven of this

Indictment are re-alleged and by this reference fully incorporated herein for the purpose of

alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

51.   Upon a conviction of any of the offenses alleged in Counts Nine through Eleven,

the defendants,

EVERTOP SERVICES,
MAJID KAKAVAND,
AMIR GHASEMI, and
ALEX RAMZI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United Stated Code, Section 2461(c), any property constituting, or derived from

proceeds obtained, directly or indirectly, as a result of the smuggling offenses.

52.   If any of the property described above, as a result of any act or omission of the

defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

INDICTMENT                              17

1   the United States shall be entitled to forfeiture of substitute property pursuant to Title

2   21, United States Code, Section 853(p), incorporated by Title 18, United States Code, Section

3   981(b) and Title 28, United States Code, Section 2461(c).

4        All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

5   Stated Code, Section 2461(c).

6   DATED:                                              A TRUE BILL.

7

8        4/7/09                                         _____
                                                        FOREPERSON

9

10  JOSEPH P. RUSSONIELLO
    United States Attorney

11

12  BRIAN J. STRETCH
    Chief, Criminal Division

13
    (Approved as to form:  C Kelly          )
14                              AUSA Kelly

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT                          18

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

**OFFENSE CHARGED**

See Attached Sheet

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Attached Sheet

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

┌ **DEFENDANT - U.S**

▶ EVERTOP SERVICES SND BHD

**RMW**

DISTRICT COURT NUMBER

CR 09    0357 HRL

---

**DEFENDANT**

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction          } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No     } give date filed

**DATE OF ARREST** ▶         Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERED TO U.S. CUSTODY** ▶    Month/Day/Year

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

United States Department of Commerce

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE   } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant    MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    CANDACE KELLY

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:          Before Judge:

Comments:

**ATTACHMENT TO PENALTY SHEET**

**CRIMINAL VIOLATIONS AND MAXIMUM PENALTIES**

**EVERTOP SERVICES SND BHD**

**Count One** Conspiracy to Export Goods Without a License: 50 U.S.C. §§ 1702 and 1705, and 31 C.F.R. Parts 560.203 and 560.204.

    MAXIMUM PENALTIES: $1,000,000 fine, 3 years of supervised release, $100 special assessment

**Counts Two through Four**

    Exporting Goods Without a License: 50 U.S.C. §§ 1702 and 1705, 31 C.F.R. Parts 560.203 and 560.204, and 18 U.S.C. § 2.

    MAXIMUM PENALTIES: $1,000,000 fine, 3 years of supervised release, $100 special assessment.

**Count Five**

    Conspiracy to Commit Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and (h).

    MAXIMUM PENALTIES: $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release, $100 special assessment

**Counts Six Through Eight**

    Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and 2.

    MAXIMUM PENALTIES: $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release $100 special assessment

**Counts Nine through Eleven**

    Smuggling Goods: 18 U.S.C. §§ 554 and 2.

    MAXIMUM PENALTIES: $250,000 fine, 3 years of supervised release, $100 special assessment

**Count Twelve**

Conspiracy to Defraud the United States: 18 U.S.C. § 371.

MAXIMUM PENALTIES:   $250,000 fine, 3 years of supervised release, $100
special assessment

**Counts Thirteen through Fifteen**

False Statements: 18 U.S.C. §§ 1001 and 2.

MAXIMUM PENALTIES:  $250,000 fine, 3years of supervised release, $100
special assessment

2

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
                                    ☐ SUPERSEDING

**OFFENSE CHARGED**

See Attached Sheet                    ☐ Petty
                                       ☐ Minor
                                       ☐ Misde-
                                          meanor
                                       ☒ Felony
PENALTY:
          See Attached Sheet

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**DEFENDANT - U.S**

AMIR GHASEMI

DISTRICT COURT NUMBER

RMW

CR 09        0357

HRL

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

United States Department of Commerce

☐ person is awaiting trial in another Federal or State Court,
   give name of court

☐ this person/proceeding is transferred from another district
   per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
   charges previously dismissed
   which were dismissed on motion
   of:
      ☐ U.S. ATTORNEY   ☐ DEFENSE  }   SHOW
                                        DOCKET NO.

☐ this prosecution relates to a
   pending case involving this same
   defendant                          }   MAGISTRATE
                                          CASE NO.

☐ prior proceedings or appearance(s)
   before U.S. Magistrate regarding this  }
   defendant were recorded under

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)                CANDACE KELLY

**DEFENDANT**

**IS *NOT* IN CUSTODY**
      Has not been arrested, pending outcome this proceeding.
1) ☐  If not detained give date any prior
      summons was served on above charges   ▸

2) ☒ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction
                                    }   ☐ Federal   ☐ State
6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes      If "Yes"
been filed?    ☐ No        give date
                           filed
DATE OF                    Month/Day/Year
ARREST         ▸
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED   ▸       Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                          Before Judge:

Comments:

A 2

## ATTACHMENT TO PENALTY SHEET

## CRIMINAL VIOLATIONS AND MAXIMUM PENALTIES

### AMIR GHASEMI

**Count One**   Conspiracy to Export Goods Without a License: 50 U.S.C. §§ 1702 and 1705, and 31 C.F.R. Parts 560.203 and 560.204.

   MAXIMUM PENALTIES:   20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

### Counts Two through Four

   Exporting Goods Without a License: 50 U.S.C. §§ 1702 and 1705, 31 C.F.R. Parts 560.203 and 560.204, and 18 U.S.C. § 2.

   MAXIMUM PENALTIES:   20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

### Count Five

   Conspiracy to Commit Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and (h).

   MAXIMUM PENALTIES:   20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised  release, $100 special assessment

### Counts Six Through Eight

   Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and 2.

   MAXIMUM PENALTIES:   20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release $100 special assessment

### Counts Nine through Eleven

   Smuggling Goods: 18 U.S.C. §§ 554 and 2.

   MAXIMUM PENALTIES:   10 years in prison, $250,000 fine, 3 years of supervised release, $100 special assessment

1

**Count Twelve**

Conspiracy to Defraud the United States: 18 U.S.C. § 371.

MAXIMUM PENALTIES:   5 years in prison, $250,000 fine, 3 years of
supervised release, $100 special assessment

**Counts Thirteen through Fifteen**

False Statements: 18 U.S.C. §§ 1001 and 2.

MAXIMUM PENALTIES:   5 years in prison (8 years if the offense involves
international or domestic terrorism), $250,000 fine, 3
years of supervised release, $100 special assessment

2

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

┌─ OFFENSE CHARGED ─────────

See Attached Sheet

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:
See Attached Sheet

┌─ DEFENDANT - U.S ─────────

▶ MAJID KAKAVAND

DISTRICT COURT NUMBER

**RMW**

CR 09        0357 HRL

DEFENDANT

┌─ PROCEEDING ─────────────

Name of Complaintant Agency, or Person (& Title, if any)

United States Department of Commerce

☐ person is awaiting trial in another Federal or State Court,
  give name of court

☐ this person/proceeding is transferred from another district
  per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
  charges previously dismissed
  which were dismissed on motion
  of:                               SHOW
                                   DOCKET NO.
  ☐ U.S. ATTORNEY  ☐ DEFENSE  }

☐ this prosecution relates to a
  pending case involving this same
  defendant                        MAGISTRATE
                                   CASE NO.
☐ prior proceedings or appearance(s)
  before U.S. Magistrate regarding this  }
  defendant were recorded under

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)        CANDACE KELLY

┌─ DEFENDANT ──────────────

IS *NOT* IN CUSTODY
  Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
     summons was served on above charges  ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☒ On this charge

5) ☐ On another conviction  }
                              }  ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
     If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No      give date
                        filed

DATE OF        Month/Day/Year
ARREST    ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED      Month/Day/Year
TO U.S. CUSTODY   ▶

☐ This report amends AO 257 previously submitted

┌─ ADDITIONAL INFORMATION OR COMMENTS ─────────

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT     Bail Amount:

If Summons, complete following:                    * Where defendant previously apprehended on complaint, no new summons or
☐ Arraignment  ☐ Initial Appearance                warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

Date/Time:                    Before Judge:

Comments:

A3

## ATTACHMENT TO PENALTY SHEET

## CRIMINAL VIOLATIONS AND MAXIMUM PENALTIES

### MAJID KAKAVAND

**Count One**   Conspiracy to Export Goods Without a License: 50 U.S.C. §§ 1702 and 1705, and 31 C.F.R. Parts 560.203 and 560.204.

MAXIMUM PENALTIES:  20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

**Counts Two through Four**

Exporting Goods Without a License: 50 U.S.C. §§ 1702 and 1705, 31 C.F.R. Parts 560.203 and 560.204, and 18 U.S.C. § 2.

MAXIMUM PENALTIES:  20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

**Count Five**

Conspiracy to Commit Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and (h).

MAXIMUM PENALTIES:  20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release, $100 special assessment

**Counts Six Through Eight**

Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and 2.

MAXIMUM PENALTIES:  20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release $100 special assessment

**Counts Nine through Eleven**

Smuggling Goods: 18 U.S.C. §§ 554 and 2.

MAXIMUM PENALTIES:  10 years in prison, $250,000 fine, 3 years of supervised release, $100 special assessment

1

**Count Twelve**

Conspiracy to Defraud the United States: 18 U.S.C. § 371.

MAXIMUM PENALTIES:  5 years in prison, $250,000 fine, 3 years of
supervised release, $100 special assessment

**Counts Thirteen through Fifteen**

False Statements: 18 U.S.C. §§ 1001 and 2.

MAXIMUM PENALTIES:  5 years in prison (8 years if the offense involves
international or domestic terrorism), $250,000 fine, 3
years of supervised release, $100 special assessment

AO 257 (Rev. 6/78)

| | |
|---|---|
| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** | |

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

—— **OFFENSE CHARGED** ——

See Attached Sheet

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY:   See Attached Sheet

**RMW**

———— **DEFENDANT - U.S** ————

▶ ALEX RAMZI

DISTRICT COURT NUMBER

CR 09        0357

**HRL**

———— **PROCEEDING** ————

Name of Complainant Agency, or Person (& Title, if any)

United States Department of Commerce

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   CANDACE KELLY

—————— **DEFENDANT** ——————

**IS NOT IN CUSTODY**

Has not been arrested, pending outcome this proceeding.

1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶                          Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶      Month/Day/Year

☐ This report amends AO 257 previously submitted

———— **ADDITIONAL INFORMATION OR COMMENTS** ————

PROCESS:

☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT      Bail Amount:

If Summons, complete following:

☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                          Before Judge:

Comments:

## ATTACHMENT TO PENALTY SHEET

## CRIMINAL VIOLATIONS AND MAXIMUM PENALTIES

### ALEX RAMZI

**Count One**    Conspiracy to Export Goods Without a License: 50 U.S.C. §§ 1702 and 1705, and 31 C.F.R. Parts 560.203 and 560.204.

MAXIMUM PENALTIES:  20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

**Counts Two through Four**

Exporting Goods Without a License: 50 U.S.C. §§ 1702 and 1705, 31 C.F.R. Parts 560.203 and 560.204, and 18 U.S.C. § 2.

MAXIMUM PENALTIES:  20 years in prison, $1,000,000 fine, 3 years of supervised release, $100 special assessment

**Count Five**

Conspiracy to Commit Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and (h).

MAXIMUM PENALTIES:  20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release, $100 special assessment

**Counts Six Through Eight**

Money Laundering: 18 U.S.C. §§ 1956(a)(2)(A) and 2.

MAXIMUM PENALTIES:  20 years in prison, $500,000 fine or twice the value of the monetary instrument involved in the transactions, 3 years of supervised release $100 special assessment

**Counts Nine through Eleven**

Smuggling Goods: 18 U.S.C. §§ 554 and 2.

MAXIMUM PENALTIES:  10 years in prison, $250,000 fine, 3 years of supervised release, $100 special assessment

1

**Count Twelve**

        Conspiracy to Defraud the United States: 18 U.S.C. § 371.

        MAXIMUM PENALTIES:  5 years in prison, $250,000 fine, 3 years of supervised release, $100 special assessment

**Counts Thirteen through Fifteen**

        False Statements: 18 U.S.C. §§ 1001 and 2.

        MAXIMUM PENALTIES:  5 years in prison (8 years if the offense involves international or domestic terrorism), $250,000 fine, 3 years of supervised release, $100 special assessment

2

